**THIRD DIVISION**
**MILLER, P. J.,**
**RAY and BRANCH, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**March 27, 2013**

# In the Court of Appeals of Georgia

A12A2071. WILLIAMS v. THE STATE

RAY, Judge.

Following a jury trial, Laquan Williams was found guilty beyond a reasonable doubt of burglary[1] and contributing to the deliquency of a minor.[2] He appeals from his convictions and the denial of his motion for new trial, contending that the evidence was insufficient to support the verdict, and that the trial court erred (1) in allowing identification testimony, and (2) in failing to give a jury charge on grave suspicion. Williams also contends that he had ineffective assistance of counsel. Finding no error, we affirm.

---

[1] OCGA § 16-7-1.

[2] OCGA § 16-12-1 (b) (1).

On appeal, we must view the evidence "in the light most favorable to the verdict and the appellant no longer enjoys the presumption of innocence; moreover, on appeal this [C]ourt determines evidence sufficiency and does not weigh the evidence or determine witness credibility."[3]

So viewed, the evidence shows that Cynthia Randolph, Eric Davenport, and their four children lived together in an apartment at 258 Parkview Extension. In the early evening hours of August 19, 2009, Margaret Davis, who lived next door to Randolph, heard a noise outside her apartment. When Davis opened the back door to investigate, she observed a boy standing by Randolph's back door and saw Williams standing on top of an air conditioning unit beating on Randolph's kitchen window. Davis, who was only a few feet away, asked them what they were doing. After Davis observed them for approximately three minutes, Williams got off the air conditioning unit and walked away with the boy. Davis then closed and locked her door.

Shortly thereafter, Davenport was returning home when he observed his young cousin, T. B., and Williams walking down the road. Davenport noticed that T. B. was carrying an "Iron Man" book bag which looked like one that belonged to Randolph's

---

[3] (Citation and punctuation omitted.) *Williams v. State*, 217 Ga. App. 636, 638 (3) (458 SE2d 671) (1995).

son. When Davenport blew his horn to get T. B.'s attention, T. B. dropped his head as if to avoid eye contact. When Davenport arrived at his apartment, he discovered that it had just been burglarized. The point of entry appeared to be the kitchen window that Williams had been beating on. Among the items taken during the burglary was the book bag that Davenport had seen T. B. carrying moments earlier. None of the items taken in the burglary were ever recovered.

1. Williams contends that the evidence was insufficient to convict him. Specifically, he argues that there was no evidence, either direct or circumstantial, to establish that he entered Randolph's residence. We disagree.

> When a criminal defendant challenges the sufficiency of the evidence supporting his or her conviction, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. The jury, not this Court, resolves conflicts in the testimony, weighs the evidence, and draws reasonable inferences from basic facts to ultimate facts. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld.[4]

---

[4] (Citations and punctuation omitted; emphasis in original.) *Nangreave v. State*, 318 Ga. App. 437, 438 (1) (734 SE2d 203) (2012).

A person commits the offense of burglary when he enters the dwelling house of another, without authority, and with the intent to commit a felony or theft therein.[5] To obtain a conviction on circumstantial evidence, the proven facts must exclude every other reasonable hypothesis except the guilt of the accused.[6] However, the State is not required to remove every possibility of innocence of the crime charged, and it is not required to disprove bare possibilities that the crime could have been committed by someone else.[7] Whether a hypothesis is reasonable and whether every other hypothesis except the guilt of the accused has been excluded are generally questions for the jury to decide.[8] Because the jury is able to hear the witnesses and observe them testify, it is considered more capable of determining the reasonableness of the hypothesis produced by the evidence or lack thereof than is this Court, and we will not disturb their findings unless it is unsupportable as a matter of law.[9]

---

[5] OCGA § 16–7–1 (b).

[6] *Huff v. State*, 281 Ga. App. 573, 575 (636 SE2d 738) (2006).

[7] *Rivera v. State*, 293 Ga. App. 215, 216 (666 SE2d 739) (2008).

[8] Id.

[9] *Badie v. State*, 317 Ga. App. 712, 716 (1) (732 SE2d 553) (2012); *Moore v. State*, 277 Ga. App. 474, 475-476 (1) (627 SE2d 107) (2006).

Evidence that, taken together, authorized the jury to find that Williams was the perpetrator of the burglary included the following: that Davis identified him as the person she saw standing on the air conditioner unit beating on the kitchen window; that the point of entry for the burglary was the kitchen window; and that, just minutes later, Davenport observed Williams and T. B. walking away from his residence carrying an item that was taken during the burglary. Although circumstantial, the evidence was sufficient to authorize the jury to conclude that all reasonable hypotheses were excluded other than Williams' guilt.[10]

Although Williams offered alibi witnesses in his defense, the jury was authorized to disbelieve this testimony and to believe the eyewitness' testimony placing him at the scene of the burglary and in possession of property taken in the burglary. It is well-settled that the determination of witness credibility, including the accuracy of eyewitness identification, is within the exclusive province of the jury.[11] Therefore, we find that the evidence was sufficient to support Williams' conviction.

---

[10] *Nangreave*, supra; *Badie,* supra; *Veasley v. State*, 312 Ga. App. 728, 730 (1) (719 SE2d 585) (2011).

[11] *Frazier v. State*, 305 Ga. App. 274, 275 (1) (699 SE2d 747) (2010).

2. Williams contends that the trial court erred in allowing Davis' testimony regarding her identification of Williams. Specifically, Williams argues that the trial court erred in finding that the circumstances of Davis' showup identification of Williams subsequent to his arrest did not create a substantial likelihood of irreparable misidentification. We discern no error.

> Although a one-on-one showup is inherently suggestive, identification testimony produced from the showup is not necessarily inadmissible. We must apply a two-part test to determine whether the showup was impermissibly suggestive, and, if the showup was impermissibly suggestive, we then consider the totality of the circumstances to determine whether a "very substantial likelihood" existed of irreparable misidentification.[12]

In evaluating the likelihood of misidentification, a court must consider "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, and the level of certainty demonstrated by the witness at the confrontation."[13]

---

[12] (Citation omitted.) *Davis v. State*, 315 Ga. App. 625, 627 (727 SE2d 238) (2012).

[13] (Citation and punctuation omitted.) *Miller v. State*, 266 Ga. App. 378, 382 (1) (597 SE2d 475) (2004).

6

The trial court held a hearing on Williams' motion in limine regarding the admissibility of Davis' out-of-court identification of Williams. The evidence shows that, shortly after Williams and T. B. were arrested for burglary, Randolph went over to Davis' apartment and informed her that the police "have the boys" and asked her if she would come identify them. Randolph then took Davis to the house where Williams and T. B. had been arrested. Davis testified that, at the showup identification, she was able to get a good look Williams, who was sitting in the back of a police car, and that she had no question in her mind that he was the one she had seen standing on the air conditioner. The evidence further shows that Davis' positive identification of Williams was based upon the fact that she had been able to get a good look at Williams for "three or four minutes" as he was standing on the air conditioner a few feet away. Furthermore, her description of the individual she saw standing on the air conditioner was consistent with her observations of Williams at the showup identification. At the conclusion of the hearing, the trial court found that the showup identification was "suggestive," but it did not find that it was impermissibly so. The trial court further found that the showup did not create a substantial likelihood of irreparable misidentification.

In reviewing the denial of a motion in limine, we construe the evidence most favorably to uphold the findings and judgment of the trial court, and we adopt its findings as to disputed facts and credibility unless clearly erroneous.[14] As the trial court's findings were supported by the evidence, it did not err in allowing Davis' identification testimony.[15]

3. Williams contends that the trial court erred in failing to give a jury charge on grave suspicion. Williams argues that the charge was required because the evidence against him was entirely circumstantial. We discern no error.

The pattern jury instruction for grave suspicion provides as follows:

Facts and circumstances that merely place upon the defendant a grave suspicion of the crime charged or that merely raise a speculation or conjecture of the defendant's guilt are not sufficient to authorize a conviction of the defendant.[16]

Although the trial court refused such a charge, it did fully and accurately charge the jury on Williams' presumption of innocence and the State's burden of

---

[14] *Flint v. State*, 308 Ga. App. 532, 537 (6) (707 SE2d 498) (2011).

[15] *Miller*, supra.

[16] (Punctuation omitted.) *Sherman v. State*, 302 Ga. App. 312, 314 (3), n. 1 (690 SE2d 915) (2010), citing Georgia Suggested Pattern Jury Instructions, Vol. II: Criminal Cases, § 1.20.20.

proving guilt beyond a reasonable doubt. Thus, "the charge as a whole covered the principles of law embodied in the [grave] suspicion charge."[17] Furthermore, the trial court instructed the jury on the credibility of witnesses, impeachment of witnesses, circumstantial evidence, mere presence, mere association, and identity. When considering the charge as a whole, we find that the trial court did not abuse its discretion in denying Williams' request for the charge on grave suspicion.[18]

4. Williams contends that his trial counsel was ineffective for three reasons. All of his arguments lack merit.

> To prevail on a claim of ineffective assistance, [Williams] must show that counsel's performance was deficient and that the deficient performance so prejudiced him that there is a reasonable likelihood that, but for counsel's errors, the outcome of the trial would have been different. We need not address both the deficient performance and prejudice prongs of the test if [Williams] has made an insufficient showing on either prong.[19]

---

[17] (Citations and punctuation omitted.) *Jones v. State*, 318 Ga. App. 105, 109 (5) (733 SE2d 407) (2012).

[18] Id. Accord *Jackson v. State*, 247 Ga. App. 273, 275 (2) (543 SE2d 770) (2000).

[19] (Citations and punctuation omitted.) *Anthony v. State*, 317 Ga. App. 807, 813 (4) (732 SE2d 845) (2012). See *Strickland v. Washington*, 466 U. S. 668, 694 (III) (B) (104 SC 2052, 80 LEd2d 674) (1984).

(a) Williams contends that his trial counsel was ineffective for failing to secure a ruling on an objection to Davenport's in-court identification of Williams. When Davenport was asked on direct examination if he could identify in court the individual he saw walking with his cousin on the day of the burglary, Davenport identified Williams and stated, "[i]t look like him right there." Trial counsel objected to this in-court identification. Rather than ruling on the objection, the trial court permitted the State to question Davenport to clarify his initial response. Upon further examination, Davenport testified that "I seen him" and confirmed that the person he saw with his cousin was Williams. Thus, any additional arguments against the in-court identification would have been futile. And as this Court has repeatedly noted, "[t]he failure to pursue a futile objection does not amount to ineffective assistance."[20]

(b) Williams contends that trial counsel was ineffective for failing to require a proper foundational witness for the admission of similar transaction evidence.[21] At trial, the State called Investigator Thomas Gillis for the purpose of admitting evidence

---

[20] (Citation omitted.) *Ventura v. State*, 284 Ga. 215, 218 (4) (663 SE2d 149) (2008).

[21] Williams does not contend that the prior offense was not sufficiently similar, or that the prior offense was not admissible to show bent of mind and course of conduct, but argues instead that proof of the crime was insufficient because the proper foundational witness did not testify at trial.

of Williams' prior conviction for burglary. Gillis testified that, during his investigation of the prior burglary, he collected blood evidence from the scene and obtained a warrant to obtain a buccal swab of Williams for the purposes of a DNA comparison. Williams was ultimately convicted for that burglary. Williams argues that trial counsel was ineffective for failing to object to Gillis' testimony regarding the DNA analysis, and for failing to move for a mistrial and/or a curative instruction, because Gillis was not the witness who conducted the analysis. However, Gillis did not testify as to the results of the DNA analysis. Rather, his testimony was limited to facts of which he had personal knowledge, and Williams was unequivocally linked to the prior burglary through the State's tender of a certified copy of his conviction. We previously have found the same type of evidence presented here to be sufficient to establish a similar transaction.[22] Thus, Williams has failed to show that his trial counsel was ineffective.

(c) Williams contends that trial counsel was ineffective for withdrawing a request to charge on knowledge. However, Williams' argument is belied by the

_____

[22] See *Howard v. State*, 318 Ga. App. 329, 331 (1) (733 SE2d 859) (2012) (Proof of similar crimes sufficient where State admitted certified copies of convictions and introduced testimony of investigating police officers). Accord *Rose v. State*, 275 Ga. 214, 216 (2) (563 SE2d 865) (2002) (prior crime sufficiently established by testimony of responding officer and certified copy of conviction).

record. While trial counsel initially withdrew the request to charge on knowledge, counsel later asked that the charge be given. Accordingly, Williams's argument is without merit.

5. Williams also contends that the trial court erred in failing to give a jury charge on knowledge. Although this issue is mentioned in his appellate brief in the section designated for his statement of facts and in his argument regarding ineffective assistance of counsel in Division 4 (c) above, it does not appear that this issue was raised in his enumerations of error. Pretermitting whether we have jurisdiction to decide this issue,[23] Williams has failed to provide proper citations to authority or argument to support his contention. To the extent it can be considered a proper enumeration of error, it is deemed abandoned pursuant to Court of Appeals Rule 25 (c) (2).

*Judgment affirmed. Miller, P. J., and Branch, J., concur.*

---

[23] See *Coweta County v. Simmons*, 269 Ga. 694, 694 (507 SE2d 440) (1998) (Court of Appeals "has jurisdiction to decide only those issues fairly raised by an enumeration of error"). See also *Bibb v. State*, 315 Ga. App. 49, 50 (1), n. 4 (726 SE2d 534) (2012) (Calling into question whether an issue is properly raised by the enumerations of error where the issue is only mentioned within an argument on a separate enumeration of error).